**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROJELIO MARIO GUERRA, | ) | CASE NO. 3:22-CV-01056-JRK |
| Plaintiff, | ) | |
| | ) | JUDGE JAMES R. KNEPP, II |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

## I.      INTRODUCTION

Plaintiff Rojelio Mario Guerra ("Mr. Guerra") seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF Doc. 1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). Pursuant to Local Civil Rule 72.2, this matter was referred to a magistrate judge for preparation of a Report and Recommendation, and it was subsequently reassigned to me pursuant to General Order No. 2022-14. For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

## II.      PROCEDURAL HISTORY

On July 28, 2019, Mr. Guerra filed applications for DIB and SSI, alleging a disability onset date of December 1, 2018. (Tr. 201-14).[1] His applications were denied initially on November 4, 2019, and upon reconsideration on April 21, 2020, and Mr. Guerra requested a hearing before an

---

[1] The transcript referred to in this Report and Recommendation is located at ECF Doc. 6 on CM/ECF.

administrative law judge ("ALJ"). (Tr. 154-63, 168-77). On September 29, 2020, an ALJ held a hearing, during which Mr. Guerra, represented by counsel, and an impartial vocational expert testified. (Tr. 32-77). On January 27, 2021, the ALJ issued a written decision finding Mr. Guerra was not disabled. (Tr. 12-31). This decision became final on April 20, 2022, when the Appeals Council declined further review. (Tr. 1-6). Mr. Guerra asserts the following assignments of error:

1. The ALJ erred when she failed to adopt the limitations set forth by the treating and examining sources and incorporate the stated limitations into the RFC.

2. The ALJ's decision at Step Three of the Sequential Evaluation that Guerra did not satisfy the criteria of Listing 14.09 was in error as it was not supported by substantial evidence.

3. The ALJ committed harmful error when her RFC failed to find that the effect of the combination of Guerra's symptoms, including pain, precluded him from the ability to engage in substantial gainful activity on a full-time and sustained basis.

4. The ALJ erred when she failed to comply with HALLEX I-2-6-76 and allow Guerra's Attorney the opportunity to make a closing argument or point to specific evidence.

(ECF Doc. 12, PageID#1094).

## III.  BACKGROUND INFORMATION

### A.  *Personal, Educational, and Vocational Experience*

Mr. Guerra was born in 1978, and he was 40 years old on the alleged onset date. (Tr. 25). He graduated from high school and completed a few years of college. (Tr. 43). He lives alone. (Tr. 55). At the time of the hearing, Mr. Guerra had a driver's license with no limitations. (Tr. 51). His past relevant work was employment as a construction worker I (DOT #869.664-014) and an assembler (DOT#701.687-010). (Tr. 25).

### B.  *Relevant Hearing Testimony*

#### 1.  Mr. Guerra's Testimony

Mr. Guerra testified that in approximately June or July 2019 he worked as a machine operator in an automotive factory, but his job ended due to taking medication. (Tr. 43). He stated that his spondylosis causes arthritis in his hands, feet, and back. (Tr. 59). He testified that he had surgery on his ACL in the past that resolved this issue for a period of time, but it started to creep back. (*Id.*). His hands would cramp, making it difficult at times to use silverware or the TV remote. (Tr. 60-61). He stated he primarily has lower back pain but also experiences neck pain. (Tr. 61). He testified that, due to his past opioid addiction, he treated his back pain with suboxone and aspirin. (Tr. 62). Mr. Guerra did not undergo physical therapy or receive pain injections. (Tr. 63).

Additionally, Mr. Guerra testified that he took medication for his mental impairments, and that these medications helped but required adjusting. (Tr. 63-64). He saw a mental health counselor monthly. (Tr. 63). He saw friends when they stopped by his house, but he no longer went out because it was "nothing but trouble." (Tr. 64). Mr. Guerra testified that he just watched TV on most days. (Tr. 64-65). He does not experience any side effects from this medication. (Tr. 64-65).

Mr. Guerra testified he lived alone and handled household chores including sweeping, dusting, vacuuming, and laundry. (Tr. 55). He stated that he struggles with completing his chores because he loses focus and motivation. (*See* Tr. 66-67).  He testified that he walks to the grocery store. (Tr. 56). He said that he sometimes experienced anxiety when he went to the grocery store, but this anxiety occurred when he could not find needed items and had to ask for help, not from dealing with fellow customers or store clerks. (*Id.*).

## 2.  <u>Vocational Expert's Testimony</u>

The vocational expert ("VE") testified that Mr. Guerra's past relevant work was employment as a construction worker I (DOT#869.664-014) and an assembler (DOT#701.687-010). (Tr. 71). For the ALJ's first hypothetical, the ALJ asked whether an individual with Mr.

Guerra's age and education who would be limited to performing work at a light exertional level with additional physical and mental limitations could perform past relevant work. This individual would be physically limited to occasionally climbing ladders, ropes, and scaffolds; frequently climbing ramps and stairs, balancing, crouching, kneeling, stooping, and crawling; frequently reaching overhead with his bilateral extremities; and occasional exposure to unprotected heights. (Tr. 71). With respect to mental limitations, this hypothetical individual could make judgments on simple work and respond appropriately to usual work situations and changes in a routine work setting that involves relatively static work processes, with any changes being explained in advance and implemented slowly. (Tr. 72). This individual additionally cannot perform work that requires a strict production quota but can perform goal-oriented work and meet end-of-day production quotas. (*Id.*). Finally, this individual can have occasional interaction with the general public, supervisors and coworkers, but cannot engage in direct public service work or team or tandem tasks with coworkers. (*Id.*). The VE opined that this individual could not perform past relevant work but could perform work as an inspector hand packager (DOT#559.687-074); warehouse checker (DOT#222.687-010); and merchandise marker (DOT#209.587-034). (*Id.*).

The ALJ's second hypothetical reduced the individual to performing work at the sedentary exertional level with the same limitations as the first hypothetical. (Tr. 73). The VE opined that the individual could perform work as an addresser (DOT#209.587-010); cutter and paster (DOT#249.587-014); and tube operator (DOT#239.687-014). (*Id*). The VE testified that being off task more than 15% would be work-preclusive, and that an employee cannot miss any work during the probationary period. (Tr. 75).

### 3.  ALJ and Counsel's Exchange Regarding Closing Arguments

At the end of the hearing, Mr. Guerra's counsel asked the ALJ to make closing remarks and point to two medical opinions in the record. (*See* Tr. 75-76). Due to time constraints, the ALJ asked Mr. Guerra's counsel if he could provide his closing remarks in writing. (*See id.*). Mr. Guerra's counsel agreed. (*See id.*). The ALJ further indicated that she did not want to "cut [Mr. Guerra's counsel] off," but - because Mr. Guerra's counsel planned to submit several medical records - the ALJ thought it would be better for counsel to outline all the information in his written closing remarks and medical records submission. (Tr. 76). Mr. Guerra's counsel again agreed. (*Id.*). The ALJ informed Mr. Guerra that she would listen to his counsel's arguments once his counsel submitted the outstanding medical records and his written closing remarks. (*Id.*). The ALJ also told Mr. Guerra's counsel to inform her if he required more time to submit Mr. Guerra's medical records. (*Id.*) Mr. Guerra's counsel stated that he would. (*Id.*). The ALJ then concluded the hearing. (Tr. 76-77). Mr. Guerra submitted nine additional medical records after the hearing, but he failed to submit any written closing remarks. (Tr. 21).

## C. *Relevant Medical/Non-Medical Opinion Evidence*

### 1. <u>State Agency Opinions</u>

#### a. **Wayne Morse, Ph.D.**

Dr. Morse conducted a one-time consultative examination on Mr. Guerra in July 2018, five months prior to Mr. Guerra's alleged disability onset date. (Tr. 483-87). Dr. Morse opined that Mr. Guerra's employment history, difficulty controlling his anger, and paranoid delusions would continue to interfere with his ability to work. (Tr. 486). Dr. Morse stated that Mr. Guerra's symptoms suggested the following DSM-5 diagnoses: (1) bipolar disorder I; (2) social anxiety disorder; (3) generalized anxiety disorder; (4) moderate alcohol use disorder; and (5) severe opioid use disorder in early remission. (*Id.*). He opined that Mr. Guerra was able to understand, remember,

5

and carry out multi-step instructions and could concentrate and persist in work-related activity. (Tr. 486). He further opined that Mr. Guerra is unable to respond appropriately to supervisors, coworkers, and the public in a work setting. (Tr. 486-87).

### b.  Todd Finnerty, Psy.D. and Katherine Fernadez, Psy.D.

In October 2019, Dr. Finnerty - a state agency reviewing psychologist - found that Mr. Guerra had moderate limitations in his ability to understand, remember, or apply information; his ability to interact with others; his ability to concentrate, persist, or maintain pace; and his ability to adapt or manage himself. (Tr. 84). He further found that Mr. Guerra was able to understand and follow simple instructions, could perform simple tasks which did not require him to keep up with fast pace or maintain high production quotas, could interact superficially with others, and could adapt to a setting where duties were relatively static and changes were infrequent and could be adjusted over time. (Tr. 90). Finally, Dr. Finnerty found that Mr. Guerra could adapt to a setting that did not require frequently shifting through a large variety of duties where he would be asked to frequently go from one task to another without losing efficiency or composure. (*Id.*). In April 2020, Dr. Fernandez affirmed Dr. Finnerty's findings. (Tr. 109, 114-15).

### c.  Gary Hinzman, M.D. and Mehr Siddiqui, M.D.

In October 2019, Dr. Hinzman -  a state agency reviewing physician - found that Mr. Guerra was capable of work at the light exertional level. (Tr. 28). Dr. Hinzman found that Mr. Guerra was limited to occasional lifting, carrying, and pulling 20 pounds, and 10 pounds frequently. (Tr. 86). Dr. Hinzman further limited Mr. Guerra to standing/walking for no more than six hours and sitting for six hours out of an eight-hour workday. (*Id.*). Dr. Hinzman also opined that Mr. Guerra should be limited to frequently climbing ramps and stairs, stooping, and crouching, and occasionally climbing ladders, ropes, and scaffolds. (*Id.*). Dr. Hinzman did not find any

manipulative or environmental limitations. (Tr. 87). In April 2020, Dr. Siddiqui affirmed the findings of Dr. Hinzman. (Tr. 111).

## 2. <u>Chelsee Smith, LPCC</u>

Ms. Smith, Mr. Guerra's counselor, submitted a statement in August 2020, opining that Mr. Guerra had "no useful ability to function" in maintaining attention and concentration for extended periods; completing a normal workday/week without interruption from symptoms; and understanding and remembering detailed instructions. (Tr. 630-31). Ms. Smith also opined that Mr. Guerra was "unable to meet competitive standards" in carrying out detailed instructions; sustaining an ordinary routine without special supervision; working in coordination with others without distraction; performing at a consistent pace without unreasonable breaks; remembering locations and work-like procedures; getting along with coworkers or peers without distraction; and maintaining socially appropriate behavior. (*Id.*). Ms. Smith also stated that Mr. Guerra was "seriously limited, but not precluded" in carrying out very short and simple instructions; performing within a schedule; managing regular attendance and punctuality; understanding and remembering very short and simple instructions; and accepting instructions and responding appropriately to criticism. (*Id.*). Finally, Ms. Smith opined that Mr. Guerra was "limited but satisfactory" in interacting with the general public and asking simple questions or requesting assistance. (Tr. 631).

### D. *Relevant Medical Evidence*

The ALJ summarized Mr. Guerra's health records and symptoms as follows:

The claimant has the following severe impairments: ankylosing spondylitis; cervical and lumbar degenerative disc disease with L5 fracture; right knee osteoarthritis, statuspost ACL tear repair; and psychological conditions variously described as bipolar disorder; social anxiety disorder; and generalized anxiety disorder. (20 CFR 404.1520(c) and 416.920(c)).

In addition to the claimant's severe impairments, he also has nonsevere impairments. An impairment that is "not severe" must be a slight abnormality that has no more than minimal limitations on the ability to do basic work activities. Specifically, the claimant has been diagnosed with diabetes mellitus; herpes simplex; bilateral carpal tunnel syndrome; closed head injury in 2016; and substance abuse described as alcohol use disorder and opioid use disorder. Records show that the claimant demonstrated good grip strength bilaterally with all finger and wrist range of motion normal (Ex. 6F). The claimant's head injury did not meet the 12-month durational requirement. He attends substance use treatment, and has no limitations related to these impairments. However, since these impairments have not been found to cause more than minimal limitations on the claimant's ability to do basic work activities or did not meet the 12- month durational requirement, the undersigned finds that they are nonsevere. Nevertheless, the undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

The claimant also alleged "Alzheimer" (Ex. 4E). However, the record contains no objective findings or laboratory studies to confirm a diagnosis. An impairment must be established by objective medical evidence from an acceptable medical source (20 CFR 404.1521 and 416.921). Therefore, in the absence of laboratory or clinical findings or medical observations validating symptoms, the existence of this impairment cannot be medically determined.

….

Lumbar x-rays previously established degenerative disc disease/spondylosis, predominately at L4-L5 and L5-S1 (Ex. 5F/2). Records also show a remote test for HLA-B27 antigen, which was positive (Ex. 25F). There was an emergency room visit in November of 2018, complaining of sciatic nerve pain, flaring over the past few days (Ex. 17F/19). Examination showed paraspinous muscle spasm, with no midline tenderness, normal heel-toe walking, and normal straight-leg raise testing (Ex. 17F/20). He was provided with a steroid dose pack and muscle relaxers (Ex. 17F/21). He returned to the emergency room in March of 2019, due to complaints of right-sided sciatica pain (Ex. 11F/19). He denied any weakness, numbness, or tingling in the extremities (Ex. 11F/19). Examination showed normal range of motion and alignment, with pain over the right sciatic nerve area, and no localized spinal or paraspinal tenderness (Ex. 11F/21). There were no focal neurological deficits, and negative bilateral straight-leg raise testing (Ex. 11F/21). Sensation, motor, and coordination findings were normal (Ex. 11F/21). He was provided with a toradol injection, muscle relaxer, and a steroid dose-pack, with recommendation to obtain outpatient follow up (Ex. 11F/21).

Primary care was established in August of 2019, where he alleged a history of ankylosing spondylitis, along with depression, anxiety, fatigue, and arthritis pain (Ex. 10F/7). Examination showed normal range of motion and strength with no

tenderness or swelling, and "minimal bowleggedness" (Ex. 10F/8). He was cooperative, with an appropriate mood and affect (Ex. 10F/8). Medications were adjusted, and he was referred for mental health treatment (Ex. 10F/8). The claimant attended suboxone clinic throughout the period at issue, reporting increased anxiety in June due to having to return to construction work after losing his factory job, and telephone message notes in July of 2019 indicated that the claimant reported that he was working "under the table" and was having difficulty finding proof that he could not take off work for his suboxone appointments (Ex. 21F/28, 35). He noted in August of 2019 that he was working on a "big house" remodeling the entire house (Ex. 7F/4). He stated that his appetite and sleep were fair, and that he was walking and had good relationships (Ex. 7F/4). He did note some frustrations concerning a recent breakup and the loss of his factory job, resulting in a return to "working construction" (Ex. 7F/6). He had an emergency room visit that month as well, with complaints of an itchy rash, along with chronic low back pain (Ex. 17F/28). He noted that he had been cutting down a tree recently, which had vines, and noticed the rash the next day, which had spread (Ex. 17F/26). He also complained of increased low back pain and sciatica since cutting down the tree (Ex. 17F/26). He was treated with steroids, and advised to seek outpatient follow up (Ex. 17F/28).

There was a primary care follow up in September of 2019; examination findings were generally unchanged, with note that he was able to forward bend to three inches above the floor (Ex. 10F/14). Although his A1c was at 6.2, he declined diabetic education classes (Ex. 10F/14). There was a primary care visit in January of 2020, where the claimant alleged a recent DUI with need for documentation of HLAB27 testing for his probation officer, along with complaints of back pain and anxiety, noting that he did not feel the Zoloft was helpful (Ex. 15F/1). Examination showed normal physical findings, with cooperative behavior, and appropriate mood and affect (Ex. 15F/2). Buspar was added to his regimen, and an HLAB27 test was ordered (Ex. 15F/2). He noted to his therapist in June that he was doing "okay," stating that he had been spending his time cutting down a tree (Ex. 16F/4). There were no significant changes reported in examination findings, although he was noted to sound frustrated (Ex. 16F/4). At his therapy follow up in August, the claimant reported continued symptoms of anxiety and depression, with increased external stressors (Ex. 16F/1). However, there were no significant changes in examination findings (Ex. 16F/1).

The claimant attended a mental health establishing visit in March of 2020, complaining of anxiousness and depressive symptoms (Ex. 13F/3). He noted that he did have some supportive friendships. He stated that he had recently started Buspar after using Zoloft for four to five years with minimal benefit (Ex. 13F/4). He noted that he had been taking suboxone for five years, which had been working well, due to abuse of pain pills, and denied issues with substances since starting suboxone (Ex. 13F/4). He reported visual and auditory hallucinations, but did not elaborate, and examination showed the claimant to be well-groomed, with a guarded demeanor, normal motor activity, normal memory and cognition, fair

insight and judgment, normal thought content, anxious mood, and full affect (Ex. 13F/6). At a follow up one month later, no significant changes were noted (Ex. 13F/9). There was an emergency room visit in August of 2020, due to complaints of chronic abdominal pain and feeling like his "belly has been getting bigger" (Ex. 17F/51). He noted that he had drank 12 beers per day for two years (Ex. 17F/51). CT scan showed benign findings, aside from fatty liver, and he was advised to stop using alcohol (Ex. 17F/53). Notes from his suboxone clinic visit in October of 2020 showed him to be fully oriented, with appropriate mood and affect, normal speech, no evidence of hallucinations or delusions, denial of suicidal ideations, and appropriate judgment and insight (Ex. 23F/4).

(Tr. 18-19, 22-23).

## IV.   THE ALJ'S DECISION[2]

In her January 27, 2021 decision, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2024.

2. The claimant has not engaged in substantial gainful activity since December 1, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.*971 et seq.*).

3. The claimant has the following severe impairments: ankylosing spondylitis; cervical and lumbar degenerative disc disease with L5 fracture; right knee osteoarthritis, statuspost ACL tear repair; and psychological conditions variously described as bipolar disorder; social anxiety disorder; and generalized anxiety disorder. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ladders, ropes, and scaffolds and frequently climb ramps and stairs, balance, crouch, kneel, stoop, and crawl. With the bilateral upper extremities, he can frequently reach overhead. He can have occasional exposure to unprotected heights. The claimant can understand, remember, and carry out simple, routine tasks but not a production rate pace such as required working on an assembly line or conveyor belt. He can make judgments on simple work, and respond appropriately to usual work

---

[2] The ALJ's findings are summarized.

situations and changes in a routine work setting that involves relatively static work processes with any changes being explained in advance and implemented slowly. He cannot perform work that requires strict production quotas, i.e., piecework, but can perform goal-oriented work and met end of day production quotas. He can have occasional interaction with the general public, supervisors, and coworkers but cannot engage in face-to-face direct public service work or work in team and tandem with coworkers.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born [in 1978] and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-26).

## V.    LAW AND ANALYSIS

### A.  *Standard of Review*

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535,

538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip* at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

### B.  *Standard for Disability*

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

### C.  *Subjective Symptoms Assessment (SSR 16-3p)*

A claimant's subjective symptom complaints may support a disability finding only when objective medical evidence confirms the alleged severity of the symptoms. *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989). An ALJ is not required to accept a claimant's subjective symptom complaints, however, and may properly discount the claimant's testimony about his symptoms when it is inconsistent with objective medical and other evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003); SSR 16-3p, 2016 SSR LEXIS 4 *15 (Oct. 25, 2017) ("We will consider an individual's statements about the intensity, persistence, and limiting

effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence."). In evaluating a claimant's subjective symptom complaints, an ALJ may consider several factors, including the claimant's daily activities, the nature of the claimant's symptoms, the claimant's efforts to alleviate his symptoms, the type and efficacy of any treatment, and any other factors concerning the claimant's functional limitations and restrictions. SSR 16-3p, 2016 SSR LEXIS 4 *15-19; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (stating that an ALJ properly considered a claimant's ability to perform day-to-day activities in determining whether his testimony regarding his pain was credible).

### D. *Step Four (Evaluation of Medical/Non-Medical Opinions)*

At Step Four of the sequential evaluation, the ALJ must determine a claimant's RFC after considering all the medical and other evidence in the record. 20 C.F.R. § 404.1520(e). In doing so, the ALJ is required to "articulate how she considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a). At a minimum, the ALJ must explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2).

According to the regulation, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be. This is the consistency standard. And the regulation specifies that the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the medical opinion will be. This is the supportability standard. *See* 20 C.F.R. § 404.1520(c)(1)-(2).

### E. *Analysis*

Mr. Guerra asserts four assignments of error: (1) the ALJ erred when she failed to adopt limitations of Ms. Smith and Dr. Morse into the RFC; (2) the ALJ erred at Step Three by not finding that Mr. Guerra satisfied Listing 14.09's criteria; (3) the ALJ failed to find that the effect of the combination of his symptoms, including pain, precluded him from the ability to engage in substantial gainful activity on a full-time and sustained basis; and (4) the ALJ violated his due process rights by not complying with HALLEX § I-26-76 and allowing his counsel the opportunity to make a closing argument or point to specific evidence. For the reasons set forth below, I find these assignments of error are without merit.

## 1. **The ALJ Did Not Err in Determining Mr. Guerra's Residual Functional Capacity.**

Mr. Guerra's argues in his first assignment of error that the ALJ failed to adopt the limitations set forth by the treating and examining sources and incorporate the stated limitations into the RFC. (ECF Doc. 12, PageID#1101-06). Although unclear, it appears Mr. Guerra raises the following sub-claims: (1) the ALJ improperly evaluated Ms. Smith's opinions regarding Mr. Guerra's mental limitations; and (2) the ALJ failed to properly evaluate Dr. Morse's opinions that pre-dated Mr. Guerra's alleged disability onset date. (*See generally* PageID#1103-06). Both sub-claims lack merit.

### a. **The ALJ properly evaluated Ms. Smith's opinions regarding Mr. Guerra's mental limitations.**

Mr. Guerra alleges that the ALJ improperly evaluated Ms. Smith's opinions regarding Mr. Guerra's mental limitations. (*See* ECF Doc. 12, PageID#1101-06). This assignment of error is not well-taken because the ALJ articulated her reasoning for finding Ms. Smith's opinion unpersuasive and provided substantial evidence in support of the ALJ's conclusion. First, the ALJ discussed the supportability of Ms. Smith's opinion. Under the Social Security Regulations, a medical opinion

is more persuasive "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ noted that Mr. Guerra had been seeing Ms. Smith since March 2020. (Tr. 23, 621). Furthermore, the ALJ discussed Ms. Smith's office notes, which indicate that Ms. Smith's mental status examinations generally showed Mr. Guerra to be well-groomed, with a guarded demeanor, normal motor activity, normal memory and cognition, fair insight and judgment, normal thought content, anxious mood, and full affect. (Tr. 23, 624).

The ALJ also addressed the consistency of Ms. Smith's opinions. Under the regulations, a medical opinion is more persuasive when it is "more consistent … with the evidence from other medical sources and nonmedical sources in the claim…" 20 C.F.R. § 404.1520c(c)(2). The ALJ concluded that Ms. Smith's opined limitations for Mr. Guerra were not consistent with Ms. Smith's own office notes and other evidence in the record. For example, the ALJ pointed to Mr. Guerra's October 2020 suboxone clinic visit where Mr. Guerra demonstrated appropriate mood and affect; appropriate insight and judgment; no evidence of hallucinations, delusions, or obsessions; denial of suicidal ideations; and ability to articulate well with normal speech/language rate, volume, and coherence. (Tr. 23, 967-68). And Ms. Smith's office notes regarding Mr. Guerra's mental status examinations reflect that Ms. Smith found Mr. Guerra to be well-groomed, with normal motor activity, normal memory and cognition, fair insight and judgment, normal thought content, anxious mood, and full affect. (Tr. 24, 624, 627, 643, 646). After articulating the supportability and consistency factors required in the regulations, the ALJ determined that Ms. Smith's opinion was unpersuasive. (Tr. 24).

Although Mr. Guerra contends that the ALJ should have reached a different conclusion as to his limitations based on the combination of evidence and the opinion of Ms. Smith, the record

16

supports a finding that the ALJ was supported by substantial evidence in finding Ms. Smith's opined limitations for Mr. Guerra unpersuasive. "'[T]he substantial-evidence standard … presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal citation omitted). Thus, I find that the ALJ appropriately considered Ms. Smith's opinion and supported the ALJ's conclusion that Ms. Smith's opinion was not persuasive with substantial evidence.

> **b. The ALJ's failure to properly evaluate Dr. Morse's opinions pre-dating Mr. Guerra's alleged disability onset date was harmless error.**

Mr. Guerra alleges that the ALJ did not consider Dr. Morse's opinion that Mr. Guerra was unable to respond appropriately to supervisors, coworkers, and the public in a work setting; and unable to respond appropriately to normal pressures in a work setting. (*See* ECF Doc. 12, PageID#1104-05). Mr. Guerra alleges that his consultative examination with Dr. Morse corroborated Ms. Smith's findings. (*Id.*). This claim is unavailing.

Dr. Morse's consultative examination was completed on July 9, 2018, which was five months prior to Mr. Guerra's alleged onset date. (Tr. 23). Failure to analyze an opinion that predates the alleged onset date is not *per se* reversible error. *See Cisan v. Saul*, No. 1:19-cv-1358, 2020 WL 4734722, at *8 (N.D.  Ohio Aug. 14, 2020). For example, in *Heston*, the Sixth Circuit found that the ALJ's failure to refer to and assign weight to a treating physician's report, which predated the relevant time period by nine months, was harmless error. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535-36 (6th Cir. 2001); *see also Lanthron v. Comm'r of Soc. Sec.*, No. 3:18-cv-689, 2019 WL 1258785, at *5 (N.D. Ohio Jan. 31, 2019), *report and recommendation adopted*, 2019 WL 5729826 (N.D. Ohio Nov. 5, 2019) (concluding that the ALJ's failure to analyze and

weigh the opinions of a treating source and a nontreating source, which predated the onset date, was harmless error because "the ALJ weighed and analyzed other medical opinion evidence that fell within the disability period … [and] discusse[d] the evidence of record at length[]"); *Mohssen v. Comm'r of Soc. Sec.*, No. 12-cv-14501, 2013 WL 6094728, at *11 (E.D. Mich. Nov. 20, 2013). Moreover, while medical history is relevant to a disability claim, a claimant's past medical history should not be given more weight than medical evidence during the relevant period of disability. *See Heston*, 245 F.3d at 536; *Lanthron*, 2019 WL 1258785, at *5.[3]

Here, the state agency psychological consultants reviewed the record (including Dr. Morse's opinion predating the relevant period) and opined that Mr. Guerra was not disabled. (Tr. 88, 110). In reconciling Dr. Morse's opinion, the state agency psychologists observed that, while Dr. Morse's findings were consistent with Mr. Guerra's presentation at his consultative examination, Dr. Morse's findings were not consistent with Mr. Guerra's presentation at other places in the record. (Tr. 85, 97, 110, 121). Based on their review of the record, the state agency psychological consultants determined Mr. Guerra was not disabled. The ALJ determined that the state agency consultants' opinions regarding Mr. Guerra's mental limitations were persuasive because they were generally consistent with and supported by the whole record. (Tr. 24).

Furthermore, the ALJ also analyzed other medical opinion evidence within the relevant disability period. In weighing Ms. Smith's opinions, the ALJ noted that Ms. Smith's office notes regarding Mr. Guerra's mental status were "generally inconsistent" with the entirety of the record. (Tr. 24). The ALJ observed that Ms. Smith's office notes from March, April, May, August, and

---

[3] However, at least two district courts outside the Northern District of Ohio have held it was error for the ALJ to ignore an opinion given before the onset date. *Dimizio v. Berryhill*, No. 2:16-cv-6, 2017 WL 4078948, at *4 (E.D. Tenn. Sept. 13, 2017) (holding that the ALJ's decision was not supported by substantial evidence because the ALJ afforded a treating physician's opinion given four months before the onset date little weight); *O'Malley v. Comm'r of Soc. Sec.*, 210 F. Supp. 3d 909, 915 (S.D. Ohio 2016) (holding that an ALJ's decision was not supported by substantial evidence because the treating physician's pre-onset opinion was consistent with evidence from the relevant time period).

October 2020 indicated that Mr. Guerra was well-groomed, with a guarded demeanor, normal motor activity, normal memory and cognition, fair insight and judgment, normal thought content, anxious mood, and full affect. (*See* Tr. 24, 624, 627, 643, 646). And the ALJ pointed to Mr. Guerra's October 2020 suboxone clinic records reflecting that he was fully oriented, with appropriate mood and affect, normal speech, no evidence of hallucinations or delusions, denial of suicidal ideations, and appropriate judgment and insight. (Tr. 23, 967-68). The ALJ also discussed other records elsewhere in the opinion concerning Mr. Guerra's mental health issues. (*See generally* Tr. 22-23). For example, while the ALJ noted Mr. Guerra's counselor stated Mr. Guerra was frustrated, there were no significant changes reported in his examination findings. (Tr. 23, 646). Moreover, at an August 2020 therapy follow-up, Mr. Guerra reported continued symptoms of anxiety and depression with increased external stressors, but there were no significant changes in his examination findings. (Tr. 23, 643).[4] Thus, while the ALJ should not have dismissed Dr. Morse's opinion on the basis that it predated the relevant period, the ALJ's error was harmless. *Landron*, 2019 WL 1258785, at *5; *Mohssen*, 2013 WL 6094728, at *11. Accordingly, I find Mr. Guerra's first assignment of error is without merit.

### 2. The ALJ Committed Harmless Error When She Did Not Analyze Whether Mr. Guerra Met Listing 14.09's Criteria.

Mr. Guerra's second assignment of error argues that the Step Three finding is not supported by substantial evidence because the ALJ failed to find that Mr. Guerra satisfied the Listing 14.09 criteria. (ECF Doc. 12, PageID#1107-08). In his reply brief, he contends that the ALJ's failure to analyze this Listing is reversible error and any arguments made by the Commissioner constitutes post-hoc rationalization. (ECF Doc. 14, PageID#1134). For the following reasons, I disagree.

---

[4] This Report and Recommendation addresses additional mental health records cited by the ALJ later in Section V(E)(3).

The Sixth Circuit has found an ALJ's conclusory findings at Step Three to be harmless error where the claimant did not put forth sufficient evidence to demonstrate that her impairments met or medically equaled the severity of the listing. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014); *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)) (finding that an ALJ erred by providing no reasons to support his finding that a specific listing was not met, and holding that the error was not harmless because it was possible that the claimant has put forward sufficient evidence to meet the listing); *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 642 (6th Cir. 2013) ("A substantial question about whether a claimant meets a listing requires more than what Sheeks has put forth here, a mere toehold in the record on an essential element of the listing.").

Where the ALJ does not evaluate a listing, the court must "determine whether the record evidence raises a substantial question as to [the claimant's] ability to satisfy each requirement of the listing." *Smith-Johnson*, 579 F. App'x at 432-33. The claimant "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* at 432. Without such evidence, an ALJ does not commit reversible error by failing to evaluate a listing at Step Three. *Id.* at 433.

Here, it is undisputed that the ALJ's decision does not discuss Listing 14.09 (Tr. 19-20). Therefore, the issue is whether the record evidence raises a substantial question as to Mr. Guerra's ability to satisfy each requirement of the listing.[5] To meet the criteria for Listing 14.09C, the claimant must establish that:

---

[5] Mr. Guerra contends in his reply brief that the ALJ's failure to address the relevant Listing was reversible, harmful error and the Commissioner's argument is a post-hoc rationalization. (ECF Doc. 14, PageID#1134). This argument is not well-taken because, as stated above, Mr. Guerra has the burden to put forth record evidence that demonstrates he reasonably met or equaled each criteria for the listing.

1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or

2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09C.

Mr. Guerra appears to allege that his ankylosing spondylitis meets the criteria for Listing 14.09B, but this is not the relevant subsection. (*See* ECF Doc. 12, PageID#1108). Significantly, Listing 14.09B is inapplicable to Mr. Guerra's case because Listing 14.09C, as reproduced above, addresses ankylosing spondylitis. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09C.  And Mr. Guerra offers no explanation or analysis demonstrating that he met any of the criteria articulated in Listing 14.09C. (*See generally* ECF Doc. PageID#1106-09); *see Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("Each listing specifies the objective medical and other findings needed to satisfy the criteria of that listing" and a claimant "must satisfy all the criteria to 'meet' the listing."). Moreover, he points to no medical opinions in the record to support an argument that he met or equaled Listing 14.09. (*See generally* ECF Doc. PageID#1106-09); *Wagner v. Saul*, No. 19-cv-2605, 2020 WL 3433294, at *9 (N.D. Ohio June 23, 2020) (affirming ALJ's finding that claimant did not meet or equal listing where no medical source opined that he met or equaled one). For these reasons alone, Mr. Guerra's argument fails.

Furthermore, even if Listing 14.09B was applicable—which it is not—Mr. Guerra failed to demonstrate he met the criteria of that listing. Listing 14.09 requires "inflammation or deformity in one or more major joints of an upper or lower extremity." 20 C.F.R. Pt .404, Subpt. P, App.1, § 14.09(B). Mr. Guerra fails to indicate what joint, if any, allegedly has inflammation or deformity.

(*See generally* ECF Doc. 12, PageID#1106-08). Next, Listing 14.09(B)(1) requires that he demonstrate inflammation or deformity in one or more major peripheral joints with involvement of two or more organs/body systems, and with one of the organs/body symptoms to at least a moderate level of severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09(B)(1).

Mr. Guerra cites one x-ray in support of his argument that his musculoskeletal system was involved to a moderate degree, claiming that it demonstrates his "ankylosing spondylitis was complicated by his degenerative disc disease with L5 fracture." (ECF Doc. 12, PageID#1108 (citing Tr. 637-38)). But Mr. Guerra's assertion is a misrepresentation of the record. Indeed, the cited x-ray states the following: "1. There has been a prior facture arising from the anterior superior L5 endplate 2. Possible degenerative disc disease from L4 to S1." (Tr. 638). This evidence only states that Mr. Guerra had a fracture at some point, *not* that there were resulting effects of at least moderate severity to Mr. Guerra's musculoskeletal system during the resulting period. (*Id.*). And to the extent Mr. Guerra attempts to rely on this diagnosis as support for his conditions' severity, it is well-settled that a diagnosis alone does not establish the severity of a condition. *See Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007) ("The mere existence of …impairments…does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[M]ere diagnosis of arthritis … says nothing about the severity of the condition.").

Because Mr. Guerra fails to raise a "substantial question" as to whether he satisfies any of the requirements of Listing 14.09, the fact that the ALJ did not analyze this listing is harmless. *See Smith-Johnson*, 579 F. App'x at 432 ("A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he has satisfied a listing. Rather, the claimant must point to specific evidence that demonstrates he reasonably

could meet or equal *every requirement of the listing*.") (emphasis added); *Doolittle v. Comm'r of Soc. Sec.*, No. 1:17 CV 1942, 2018 WL 4615965, at *11 (N.D. Ohio Sept. 26, 2018). Therefore, this assignment of error is without merit.

Although not established by his assignment of error heading,[6] Mr. Guerra additionally alleges that the ALJ failed to consider his fatigue. (ECF Doc. 12, PageID#1108-09). He states that the medical evidence "as set forth above" demonstrates that he had fatigue. (*Id.* at PageID#1109). Yet Mr. Guerra fails to cite *any* evidence under this assignment of error regarding in support of his fatigue argument (*see generally id.* at PageID#1108-09), and it is not appropriate for a court to scour a merits brief and the record in search of evidence to support a plaintiff's argument. Moreover, Mr. Guerra dedicates little to no analysis in support of this conclusory assertion. (*See id.*). Because Mr. Guerra has failed to adequately demonstrate how the ALJ erred in this regard, I deem this argument waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *Ray v. Saul*, No. 1:19-cv-01880, 2020 WL 5203493, at *10 (N.D. Ohio Sept. 1, 2020) (finding conclusory and undeveloped arguments waived).

### 3. **The ALJ's RFC Determination is Supported by Substantial Evidence.**

Mr. Guerra's third assignment of error is that the ALJ failed to find that the effect of the combination of his symptoms, including pain, precluded him from the ability to engage in

---

[6] Courts in the Northern District of Ohio have previously cautioned Mr. Guerra's counsel to refrain from combining disparate challenges and arguments regarding the sequential disability evaluation together in a single assignment of error. *See, e.g.*, *Nelson v. Comm'r of Soc. Sec.*, No. 1:21-CV-01784-JG, 2023 WL 2435332 (N.D. Ohio Jan. 31, 2023), *report and recommendation adopted*, 2023 WL 2431989; *Overstreet v. Comm'r of Soc. Sec.*, No. 1:21-CV-2062, 2022 WL 15524729, at *11 n.9 (N.D. Ohio Oct. 11, 2022) (citing Case No. 1:21-cv-00556, Doc. 19, at 34 n.7 (filed 3/2/2022); Case No. 5:20-cv-02850, Doc. 19, at 34 n.5 (filed 2/2/2022); Case No. 5:20-cv-01340, Doc. 21, at 26 n.9 (filed 8/16/2021); Case No. 1:20-cv-01186, Doc. 21, at 25 n.8 (filed 8/16/2021)), *report and recommendation adopted*, No. 1:21CV2062, 2022 WL 15522981 (N.D. Ohio Oct. 27, 2022)). I caution Mr. Guerra's counsel to heed this admonition in the future.

substantial gainful activity on a full-time and sustained basis. (ECF Doc. 12, PageID#1109-11). This assignment of error is not well-taken because it overlooks the thorough analysis conducted by the ALJ.

First, the ALJ discussed Mr. Guerra's treatment history. For example, the ALJ discussed Mr. Guerra's November 2018 and March 2019 emergency room visits where he complained of sciatica nerve pain. (Tr. 22, 583, 667). At the November 2018 visit, Mr. Guerra had no midline tenderness, a supple neck, no flank pain in his back, no pain to the touch in his back, normal heel-toe walking, and normal straight leg testing. (Tr. 22, 668). During his March 2019 visit, Mr. Guerra denied any joint or muscle pain, as well as any numbness, weakness, or tingling in his extremities. (Tr. 22, 585). Mr. Guerra's examination results showed normal range of motion and alignment, no localized spine or paraspinal tenderness, no neurological deficits, negative straight leg raises, and normal sensation, motor, and coordination. (Tr. 22, 585). Additionally, the ALJ then discussed Mr. Guerra's August 2019 emergency room visit where he reported an itchy rash and chronic low back pain, which resulted from Mr. Guerra cutting down a tree. (Tr. 22, 676). Mr. Guerra received steroids and was advised to seek outpatient follow-up. (Tr. 22, 676). Moreover, the ALJ noted an August 2020 emergency room visit where Mr. Guerra reported chronic adnominal pain and feeling like his "belly has been getting bigger." (Tr. 23, 699). But his CT scan showed benign findings – with the exception of fatty liver – and the medical professional advised Mr. Guerra to stop drinking alcohol. (Tr. 701).

The ALJ also addressed Mr. Guerra's primary care examinations. Specifically, the ALJ discussed Mr. Guerra's August 2019 visit where he denied any pain in his back, neck, joints, or muscles of his legs, feet, or arms. (Tr. 22, 554). This medical examination showed supple neck, unremarkable musculoskeletal results such as normal range of motion and strength in Mr. Guerra's

arms and legs, and no tenderness or swelling. (Tr. 554). Another primary care visit in September 2019 showed generally unchanged findings; specifically, supple and non-tender neck, normal range of motion and strength in his arms and legs, no tenderness or swelling, and being able to forward bend to three inches above the floor. (Tr. 23, 560). And Mr. Guerra's January 2020 primary care visit revealed normal findings. (Tr. 23, 632-33).

Moreover, the ALJ discussed records involving Mr. Guerra's mental health and mental health symptoms. For example, in August 2019, Mr. Guerra's primary care physician found Mr. Guerra to be cooperative, with an appropriate mood and affect. (Tr. 22, 554). Mr. Guerra's primary care physician adjusted Mr. Guerra's medications and referred him for mental health treatment. (*Id.*). The ALJ noted Mr. Guerra's attendance at a suboxone clinic throughout the relevant period, reports of increased anxiety in June 2019 due to having to return to construction work after losing his factory job, and July 2019 message notes indicating that Mr. Guerra reported having difficulty finding proof that he could not take off work for his suboxone appointments. (Tr. 22, 836, 843). The ALJ also discussed a January 2020 primary care visit where Mr. Guerra complained of back pain and anxiety and reported that he did not feel the Zoloft was helpful. (Tr. 23, 632). Buspar, an anxiety medication, was also added to his regimen at this primary care visit. (Tr. 23, 632). At a June 2020 therapy appointment, Mr. Guerra reported he was doing "okay" and that he had been spending his time cutting down a tree. (Tr. 23, 646). And although his therapist noted Mr. Guerra sounded frustrated, there were no significant changes reported in his examination findings. (Tr. 23, 646). Mr. Guerra reported continued symptoms of anxiety and depression with increased external stressors at an August 2020 follow-up therapy visit, but there were no significant changes in his examination findings. (Tr. 23, 643).

But the ALJ's analysis did not stop there. Indeed, elsewhere in the decision, the ALJ discussed Mr. Guerra's daily activities. For example, the ALJ noted Mr. Guerra's Adult Function Report where Mr. Guerra stated that he was able to manage personal care, prepare meals, and mow the lawn for a limited period. (Tr. 21, 239-41). The ALJ also discussed Mr. Guerra's report that he could walk three miles before needing to rest. (Tr. 21, 243).

Mr. Guerra cites a number of medical records in support of his argument that the combination of his symptoms, including pain, precluded him from the ability to engage in substantial gainful activity on a full-time and sustained basis. But Mr. Guerra fails to establish how the evidence he cites demonstrates that the ALJ failed in this regard. (*See generally* ECF Doc. 12, PageID#1109-11). Mr. Guerra is "essentially asking this Court to reweigh the evidence and issue a *de novo* determination." *Vidot v. Colvin*, No. 1:14 CV 1343, 2015 WL 3824360, at *8 (N.D. Ohio June 18, 2015). This the Court cannot do. "Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion." *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Commissioner enjoys a "zone of choice" within which to decide cases without risking being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). As demonstrated above, substantial evidence supported the ALJ's conclusion. Accordingly, I recommend that the Court reject this assignment of error.

### 4.  **The ALJ Did Not Violate Mr. Guerra's Procedural Due Process Rights Where She Provided Counsel an Opportunity to Include His Closing Remarks in a Post-Hearing Brief.**

Mr. Guerra seeks to have this case reversed because the ALJ allegedly violated due process by not allowing Mr. Guerra's attorney to make a closing argument at the administrative hearing due to time constraints. (ECF Doc. 12, PageID#1111-12). He contends that the ALJ raised

questions at the hearing regarding the documentation for Mr. Guerra's ankylosing spondylitis diagnosis, and his attorney wanted to point to specific documentation in support. (*Id.* at PageID#1112). Thus, Mr. Guerra asserts that the ALJ's failure to provide Mr. Guerra the opportunity to make a closing argument denied him a full and fair hearing (*Id.*). In support, Mr. Guerra points to the Social Security Administration's Hearings, Appeals, and Litigation Manual ("HALLEX"), which states:

> During a hearing, an ALJ will provide the claimant and appointed representative, if any, reasonable time to present oral argument. Absent special circumstances, the ALJ will not fix a time limit on oral argument prior to the presentation of arguments. The ALJ will ensure all oral arguments are recorded and made a part of the record.

After all hearing testimony has been presented, the ALJ will:

- Offer the claimant and appointed representative, if any, the opportunity to make a final oral argument at the hearing; and
- If necessary, address assertions made during final oral argument by the claimant or appointed representative, if any, if the argument varies sharply with the evidence of record or if the argument raises new relevant issues.

HALLEX § I-2-6-76 (https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-76.html, last visited May 5, 2023).

Mr. Guerra's reliance on HALLEX in support of his due process argument is unavailing. Although HALLEX describes policies ALJs should follow when conducting hearings and reviewing a claimant's case, HALLEX's procedural guidance is not binding on this court. *See Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008); *Workman v. Comm'r of Soc. Sec.*, No. 3:20-CV-01821, 2021 WL 8342810, at *12 (N.D. Ohio Nov. 15, 2021); *Roberts v. Comm'r of Soc. Sec.*, No. 2:18-cv-541, 2019 WL 4023549, at *7 (S.D. Ohio Aug. 26, 2019) ("Importantly, HALLEX is an internal guidance tool that does not have the force of law…Indeed, HALLEX does not impose judicially enforceable duties on either the ALJ or this Court.").

Nor do procedural due process rights arise from HALLEX violations alone. *See Eboch v. Comm'r of Soc. Sec.*, No. 5:12-cv-649, 2012 WL 7809080, at *4 (N.D. Ohio Dec. 13, 2012), *report and recommendation adopted*, 2013 WL 1284353 (N.D. Ohio Mar. 27, 2013) ("[A]gency procedures set forth in HALLEX may embody, but do not *create* federal due process rights for claimants.") (emphasis in original). Indeed, "[n]o circuit has held that…HALLEX creates *constitutional rights* because, of course, only the Constitution, not an agency's rules or procedures, is the source of such rights." *Dukes v. Comm'r of Soc. Sec.*, No. 1:10-cv-436, 2011 WL 4374557, at *9 (W.D. Mich. Sept. 19, 2011) (quoting *Davenport v. Astrue*, 417 F. App'x 544, 547-48 (7th Cir. 2011) (emphasis in original)).

Some courts, however, would afford relief based on an alleged HALLEX violation in cases where the claimant shows prejudice resulting from the violation. *See Bester v. Comm'r of Soc. Sec.*, No 1:18cv156, 2019 WL 3037564 (S.D. Ohio July 11, 2019); *see also Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983) ("[A]n agency's violations of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.").

But Mr. Guerra fails to demonstrate that the ALJ's decision to not allow Mr. Guerra's attorney to make a closing argument at the administrative hearing due to time constraints amounted to prejudice. Indeed, Mr. Guerra just cites HALLEX—a nonbinding internal guidance manual— and then states that the ALJ's denial of a closing argument "deprived [him] of a full and fair hearing in this matter" because the ALJ asked questions regarding documentation for his ankylosing spondylitis diagnosis and his counsel wanted to point out specific documentation. (ECF Doc. 12, PageID#1112). Notably, Mr. Guerra failed to inform this Court in his merits brief that the ALJ did in fact allow Mr. Guerra's counsel the opportunity to submit medical documentation and written

closing arguments after the hearing. (*See id.* at PageID#1111-12). The transcript states the following:

> **ALJ:** Okay. All right. Thank you. Counsel, any questions?
>
> **ATTY:** I don't have any questions for [the VE], but I would like to provide a closing statement when we get to that point.
>
> **ALJ:** Counsel, we are running a little late, so can you go do that in writing?
>
> **ATTY:** As to – I just wanted to point out two opinions in the record. I won't exceed a few seconds.
>
> **ALJ:** Counsel, I'm really running late. I mean –
>
> **ATTY:** I can provide in writing. That's fine.
>
> **ALJ:** And I don't want to cut you off, but you're going to be submitting a lot of medical in [sic], so when that medical comes in it might be good to just outline all in a written closing with the medical.
>
> **ATTY:** Sure.
>
> **ALJ:** Does that sound good?
>
> **ATTY:** Absolutely. Yeah, that sounds good. Thank you.

(Tr. 75-76).

Although the ALJ did not permit a closing argument due to time constraints, the transcript reveals that the ALJ offered counsel the opportunity to submit a post-hearing brief where counsel could include his closing remarks and discuss the medical evidence, which counsel agreed to at the hearing. (*See id.*). Significantly, counsel did not take advantage of this opportunity and failed to submit a post-hearing brief, despite submitting nine additional post-hearing medical records. (Tr. 21).

While there does not appear to be any binding case law in the Northern District of Ohio regarding this issue, the U.S. District Court for the Northern District of Illinois faced a similar due process argument regarding an ALJ's denial of a closing argument in *Mary N.S. v. Kijakazi*. That court declined to remand because the claimant failed to cite "a single case" that was remanded to

29

allow for an oral argument, and the arguments claimant wanted to raise had all been addressed upon appeal. *Mary N.S. v. Kijakazi*, No. 19 C 3133, 2021 WL 5505381, at *9 (N.D. Ill. Nov. 24, 2021). Like *Mary N.S.*, Mr. Guerra fails to cite any case to support his argument that a remand is necessary to allow for an oral argument. (ECF Doc. 12, PageID#1111-12). Moreover, Mr. Guerra's counsel had an opportunity to include his closing remarks in a post-hearing brief, but he failed to do so. (Tr. 21, 75-76). Thus, even if the ALJ did not strictly follow the HALLEX guidelines, Mr. Guerra failed to articulate a due process argument or demonstrate prejudice. Accordingly, I find his final assignment of error without merit.

## VI.    RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court OVERRULE Mr. Guerra's assignments of error and AFFIRM the Commissioner's decision.

Dated: May 10, 2023

*s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
United States Magistrate Judge

## VII.   NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a

determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).